THE STATE, DUDLEY S. GREGORY AND OTHERS, PROSE-
CUTORS, v. THE MAYOR AND ALDERMEN OF JERSEY
CITY.

Where, under the sixty-ninth section of the charter of Jersey City,
the power is given to the board of public works "to purchase sites
for, and purchase or construct a city hall, school-houses, engine-houses,
&c., and such other buildings as may be necessary for the purposes of
this act," &c.—*Held*,

1. That the legislature did not intend by these provisions to invest
the board of public works with an arbitrary or unlimited power to
purchase either land or buildings.

2. Every lawful exercise of this power to purchase land, necessarily
involves the determination by the board of two things: first, that some
particular building is necessary; second, the quantity of land required
as a site for such building.

3. A resolution of said board to purchase a tract of about nine acres of
land, "to be used as a site for the location of a city hall and other
city buildings," is unauthorized, for there is no determination of the
board that so large a tract is needed for the location and proper use
of a city hall, and the judgment of the board really was, that the tract
was sufficient not only for a city hall, but for other city buildings.

4. The legislature did not intend to confer on the board of public
works the power to purchase a site or sites for buildings not desig-
nated or even known.

*Certiorari* to remove resolutions, &c.

This writ brings up two resolutions passed by the board of
public works of Jersey City, on the 13th day of February,
A. D. 1872, viz.:

*Resolved*, That the proposition of Mahlon B. Crampton to
sell to the city the plot of ground known as a portion of the
estate of James Harrison, containing three hundred and
ninety-six thousand seven hundred and sixty-four square feet,
as shown on a diagram accompanying said proposition, for
the sum of $2000 for every two thousand five hundred square
feet, be accepted, and that a contract be entered into for the
purchase of the same, and that the city attorney be requested
to prepare said contract, and have the same executed by the

proper authorized parties; the same to be used for a site for the location of city hall and other city buildings; payments to be made in bonds of the city, to run for twenty years, and bearing interest at the rate of seven per cent. per annum, said bonds to be taken at par and accrued interest up to the date of the delivery of the deed.

*Resolved*, That the board of finance and taxation be and are hereby requested to issue the necessary bonds for the payment of the purchase money for land known as a portion of the Harrison estate, for a site for new city hall, and other city buildings.

Argued at November Term, 1872, before Justices DEPUE, VAN SYCKEL and WOODHULL.

For the prosecutors, *S. B. Ransom.*

For the defendants, *J. Dixon.*

The opinion of the court was delivered by

WOODHULL, J.   As the second of the two resolutions brought up by this writ must evidently stand or fall with the other, the only matter really in dispute is the validity of the first resolution; and this, it is admitted, depends on the true construction of the sixty-ninth section of the act to reorganize the local government of Jersey City. (*Laws*, 1871, *p.* 1094.)

The provisions of that section, so far as they relate to the power of the board of public works to purchase land, are as follows: " That the said board shall have power to purchase sites for, and purchase or construct a city hall, school-houses, engine-houses, &c., and such other buildings as may be necessary for the purposes of this act," &c.

Nothing can be plainer than that the legislature did not intend by these provisions to invest the board of public works with an arbitrary or unlimited power to purchase either land or buildings. Their authority to purchase or construct buildings is expressly limited to such as are necessary;

and as to land, their authority extends no further than the purchasing of sites for the necessary buildings. These words, *necessary* and *sites,* are to be understood here in their ordinary and popular sense. A building necessary for the purposes of the act is one convenient and proper for such purposes, (*State, N. J. R. R. & T. Co., Pros.,* v. *Hancock, Coll.,* 6 *Vroom* 537,) a building reasonably required or needed for carrying into effect the provisions of the act.

And a *site,* in the sense of the act, means only so much land as is reasonably required or needed for the location and convenient use of some particular necessary building.

Every lawful exercise of this power to purchase land necessarily involves the determination by the board of two things : first, that some particular public building is necessary ; secondly, the quantity of land required as a site for such building. If it appears that the board has failed to exercise its judgment in regard to either of these essential matters, the purchase of land attempted in this case cannot be sustained.

Now, while it may be fairly inferred from the resolution itself that a new city hall is, in the judgment of the board, necessary in the sense of the act, there is nothing to justify such an inference with respect to any other public building. The city hall is the only building named in the resolution, and is manifestly the only one to which the attention of the board has been specially directed, and about which its judgment had been exercised.

Having decided upon the necessity of the additional building, the board was then authorized by the act to purchase for that building a *site* in the sense just explained—not a tract of unlimited extent, designed for the location and use of such buildings as might, in the near or distant future, become necessary, but only so much land as in the judgment of the board was reasonably required for the purposes of that one building, the city hall, which the board had decided to be *then* necessary.

The object of the resolution in question, and its effect if

sustained is, to complete a contract for the purchase of about nine acres of land, at a cost to the city of more than $300,000.

Has the board at any time in the exercise of its official judgment, determined that so large a tract is needed for the location and proper use of a city hall? Manifestly not. On the contrary, it appears incontestably from the resolution itself that the judgment of the board really was, that the tract in question is sufficient, not only as a site for a city hall, but for other buildings besides. It was, in the language of the resolution, " to be used for a site for the location of city hall, *and other city* buildings."

But as has already been intimated, it must be assumed that these *other buildings* were not then, in the judgment of the board, necessary.

The authority therefore to purchase any land at all, as sites for those buildings, was wholly wanting.

The sole ground of the authority to purchase was the then existing necessity for the single building named in the resolution of the board.

The idea that the legislature intended to confer upon this department of the city government, influential and honorable and powerful as it undoubtedly is, and was designed to be, the power to purchase a site or sites for buildings not designated or even known, finds no substantial support either in the language or in the scheme and purposes of the act.

The word *sites* has evidently been understood by the board in a sense far more vague and general than the legislature intended.

One induction of this is, the use in the resolution of the singular *site*, in connection with more than one building, while the act has only the plural *sites* for buildings, each site being regarded as holding a certain fixed relation to its proper building, its extent necessarily varying with, and to be determined by the size, character and uses of that building.

To permit the consummation of the purchase contemplated in this case, would be in effect to concede to the board of public works an almost unlimited power to purchase real

estate, and for that purpose to make the most exhausting demands upon the treasury and the resources of the city.

For if, under the circumstances appearing in this case, the board may lawfully purchase nine acres of land as a site for a city hall and other city buildings, there is nothing, so far as I can see, to prevent it purchasing another tract, somewhere else within the city limits, of nine or of ninety acres as a site for a school-house or a hospital, and other city buildings.

My conclusion is, that the resolutions brought up by this writ were unauthorized, and must therefore be set aside.

CITED in *Seidler* v. *Chosen Freeholders, &c.,* 10 *Vr.* 632.