EDMUND WILSON, ATTORNEY-GENERAL, EX REL. CIVIL
SERVICE COMMISSION OF NEW JERSEY, RELATOR, v.
WILLIAM H. O'NEILL, RESPONDENT.

Submitted July 3, 1913—Decided November 19, 1913.

The chief of police in cities governed by the Charter act of 1908.
page 486 (*Comp. Stat., p.* 1239), is by said act constituted a head
of department, and therefore in the unclassified service under
section 11 of the Civil Service act of 1908, page 235. *Comp.
Stat., p.* 3795.

On demurrer to information in nature of a *quo warranto.*

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KALISCH.

For the relator, *Nelson B. Gaskill,* assistant attorney-
general.

For the respondent, *Borden D. Whiting.*

The opinion of the court was delivered by

PARKER, J.    The controversy relates to the office of chief
of police of the city of East Orange.    The information at-
tacks the appointment of respondent, O'Neill, by the mayor
and his confirmation by the council as in contravention of the
Civil Service act of 1908 (*Comp. Stat., p.* 3795), which was
adopted by East Orange.    The information sets up that East
Orange adopted as its charter the Referendum Charter act of
1908 (*Pamp. L., p.* 486; *Comp. Stat., p.* 1239), and also
adopted the Civil Service act; that the commission classified
the office of chief of police in the competitive class, and gave
due notice thereof, but that disregarding the Civil Service act
the mayor nominated respondent to the council as chief of
police, the nomination was confirmed by the council, and that
he assumed and still exercises said office unlawfully in viola-

tion of said act. The demurrer specifies several grounds, of which only the first and third need be considered. The first is in substance that the classification of the office in question by the commission was without warrant of law; the third, that the Civil Service act does not apply to said office.

The Charter act provides, among other things, that one of the city officers shall be a chief of police (section 5); that he shall be the head of the police department (section 27); that all city officers except such as are to be elected or otherwise appointed shall be appointed by the mayor, subject to confirmation by the council. By subsections 39 and 37 of section 37 it is made the duty of the council when so directed as a result of an election based on petition of voters, &c., to organize a board of police commissioners, who shall be city officers and "whose powers and duties shall be to control and regulate the appointment, suspension and dismissal of the officers, men and employes of the police department of said city, to fix their compensation, make rules and regulations for the government of the department," &c. It is stipulated that on May 4th, 1909, these provisions were submitted to the voters and adopted and that a board of police commissioners was organized accordingly. The Civil Service act was adopted in 1910; and the appointment of O'Neill followed in 1911.

We are clear that whatever weakness may inhere in respondent's title to the office, it is invulnerable to the attack made by the present information. By section 11 of the Civil Service act, all heads of departments of municipalities adopting the act are in the unclassified service, and therefore the commission has no official voice in their appointment. The chief of police in cities governed by the Charter act of 1908 is, as we have seen, the head of a department, viz., the police department, by the express language of the act. With these major and minor premises, the syllogism can be completed in no other way than by concluding that the chief of police in cities governed by the act of 1908 is in the unclassified service. This result we consider to be perfectly plain notwithstanding the organization of the board of police commissioners pursuant to the election. The point suggests itself that by reason of

the creation of the police board the chief of police ceases to be the head of the department, and that the board is substituted as such head. We think, however, there is no force in this point.

The scheme of the Charter act is obviously to provide an alternative system for the supervision of the entire police department by a municipal agency. In cases where the Charter act is adopted generally, the plan provided by that act is that the mayor or the council or both shall act as a supervisory power and make the necessary rules and regulations for the conduct of the department. This is the course generally pursued in the smaller municipalities, and was evidently intended by the legislature to be pursued in cities coming within the classification of the act where it was not thought worth while to assign these duties to an agency exclusively constituted to perform them. On the other hand, the citizens might prefer to have such special agency, and in that case by voting for and organizing the police commission they could obtain a body created expressly and exclusively for the purposes specified in the act and already set forth. This leaves the chief of police as still the head of the department subject to the executive and legislative and supervisory action of the board of police commissioners, just as he was theretofore subject to the legislative and executive and supervisory action of the mayor and council.

This result makes it unnecessary to decide whether after the organization of a police commission the appointment of the chief remains with the mayor or is transferred to the commission. There seems to be good ground for an argument that the chief is but one of the "officers, men and employes of the police department" whose appointment is expressly committed to the board of police commissioners when organized; but the point is not strictly before us and we refrain from passing upon it.

There will be judgment for the respondent on the demurrer.