73 N.J. Super. 440 (1962)
180 A.2d 185
THE CITY OF EAST ORANGE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND THE CITY COUNCIL OF THE CITY OF EAST ORANGE, CONSISTING OF EDWARD E. RUHNKE, MARK G. STERN, JR., DONALD F. MacART, VICTOR J. RUETER, RONALD J. PICHE, ELMER F. HOLTZ, CHARLES M. STACKHOUSE, BENJAMIN LOCKER, JOHN F. JARMAN AND JOHN R. KIDD, JR., PLAINTIFFS,
v.
THE BOARD OF WATER COMMISSIONERS OF THE CITY OF EAST ORANGE, CONSISTING OF EARLE R. MATH, THEODORE TAYLOR, THOMAS J. BRETT, FRANCIS J. PINQUE, TRANSCONTINENTAL GAS PIPE LINE CORPORATION, A FOREIGN CORPORATION OF THE STATE OF DELAWARE, AND JERSEY CENTRAL POWER & LIGHT COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 30, 1962.
*443 Mr. William L. Brach and Mr. Matthew P. Boylan argued the cause for all plaintiffs (Mr. William L. Brach, City Counsel of the City of East Orange, attorney; Mr. Matthew P. Boylan, of counsel).
Mr. Charles Danzig argued the cause for defendant Board of Water Commissioners of the City of East Orange and the individual members thereof (Messrs. Riker, Danzig, Marsh & Scherer, attorneys).
*444 Mr. Russell E. Watson argued the cause for the defendant Transcontinental Gas Pipe Line Co. (Messrs. R.E. and A.D. Watson, attorneys).
Mr. William T. Osborne appeared for defendant Jersey Central Power & Light Company.
GIULIANO, J.S.C.
This is a declaratory judgment action to determine whether the City Council of the City of East Orange has exclusive power to acquire, sell or otherwise dispose of any right, title or interest in lands constituting the water reserve of the City of East Orange, or whether that power rests in the board of water commissioners of that city. The action was instituted by the City of East Orange, a municipal corporation of the State of New Jersey. Thereafter, by court order the City Council of the City of East Orange, consisting of the ten above-named individuals, was added as a party plaintiff. At the pretrial conference permission was granted to serve and add as party defendants the four individual members of the Board of Water Commissioners of the City of East Orange.
One of the issues raised at the pretrial was whether or not the board of water commissioners is an entity that can be sued. For the purpose of this action the question must be answered in the affirmative. This is due to N.J.S. 2A:16-53 and 56 which respectively provide that
"A person [including a municipal corporation Bergen County v. Port of N.Y. Authority, 32 N.J. 303 (1960)] interested under a deed, will, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder."
and
"When declaratory relief is sought, all persons having or claiming any interest which would be affected by the declaration shall be made parties to the proceeding." (Emphasis added)
*445 The main question arose in 1960 when defendant board of water commissioners, acting without the consent and approval of the city council, executed an easement and a lease affecting water reserve lands of the City of East Orange.
In a resolution adopted March 28, 1960 the board of water commissioners authorized its president and secretary to execute a 40-year easement to defendant Transcontinental Gas Pipe Line Corporation (Transcontinental). The easement, which was executed on that date and approved by the mayor on March 30, 1960, gives Transcontinental the right to use a strip of land 30 feet wide across the water reserves owned by the City of East Orange in the Borough of Florham Park, Township of Livingston, Town of Millburn and Village of South Orange, for the purpose of constructing, operating and maintaining a 36-inch pipeline for the transportation of natural gas. This agreement was never submitted to the city council for its approval.
On or about May 5, 1960 the board of water commissioners entered into a 35 1/2 year lease with defendant Jersey Central Power & Light Company (Jersey Central), wherein Jersey Central was given a right of way of a width of 50 feet across East Orange water reserve land located in the Township of Livingston, for the purpose of constructing, operating and maintaining one or more circuits for the transmission and distribution of electrical energy. This lease was also entered into without the consent and approval of the city council.
There is no suggestion that the board of water commissioners did not obtain a fair price for the use of the land as set forth above, or that the particular uses were in any way harmful to the city. It is plaintiffs' contention that any purported action which will affect the right, title or interest of the city in its water reserve lands must be approved by the city council. It is argued that only the city council has authority to empower the board of water commissioners to take such action. Therefore, plaintiffs *446 seek to restrain the board of water commissioners from hereafter acting in any manner which might affect the right, title or interest of the water reserve lands until and unless the city council has first duly authorized and approved such action. They also seek to require the board of water commissioners to submit for city council approval both the easement and lease set out heretofore.
The board of water commissioners denies plaintiffs' contentions and by way of counterclaim asserts the right to make such contracts in connection with the waterworks and water supply system as are necessary or expedient in the proper conduct of its business without obtaining the approval or concurrence of the city council. The board of water commissioners seeks a judgment that it and not the city council has exclusive executive, legislative and supervisory jurisdiction over the waterworks and the water supply system of the City of East Orange, and that it has power and authority to lease, acquire, sell or create any interest in lands comprising the waterworks or water supply system of the City of East Orange. It also seeks a determination that the agreements already entered into without city council approval are valid and subsisting.
Defendants Transcontinental and Jersey Central deny that the action of the board of water commissioners in executing the easement and lease was ultra vires, and contend that the action taken by the board of water commissioners was a valid exercise of the authority and power granted to it. By way of affirmative defense, Transcontinental raises the doctrine of estoppel against the plaintiffs. It is alleged by Transcontinental that by reason of the city council's failure to take appropriate action to prevent the execution of the March 28, 1960 easement, and by reason of the consideration paid and assumed by Transcontinental (coupled with its construction of the natural gas pipeline), plaintiffs are estopped from maintaining and prosecuting their civil action for the declaratory judgment demanded by the complaint. (The pretrial order states *447 that defendant Jersey Central takes no position as to the powers here being construed but "will be happy to have the matter determined." Jersey Central was represented at the trial, but no argument was made in its behalf.)
In the pretrial order all defendants admit that the lands constituting the water reserve were acquired over a period of nearly 60 years dating back to 1903, a date well prior to the establishment of the board of water commissioners. Lands have been acquired either in the name of the City of East Orange or in the name of the Mayor of the City of East Orange and City Council of the City of East Orange. The bulk of the lands was acquired out of the proceeds of bond issues authorized by ordinances adopted by the City Council of the City of East Orange. The principal and interest of these bond issues have been met from revenues from the sale of water, which revenues were collected by and deposited with the Board of Water Commissioners of the City of East Orange.
All parties have stipulated in the pretrial order that for the purpose of this action the past course of conduct of the board of water commissioners or the city council with respect to the sale, lease or acquisition of land in the water reserve is immaterial and irrelevant, the powers which each body possesses being a question of law unaffected by such conduct.
On June 2, 1908 the City of East Orange did adopt by referendum L. 1908, c. 250 (R.S. 40:103-5) as the city charter of the City of East Orange. It is provided in section 5 that the officers of the city shall be "A City Council consisting of two members from each ward," "An Engineer of the Water Department," and "The members of the Board of Water Commissioners, if and when appointed." Section 31 (31) provides:
"* * * Whenever a Board of Water Commissioners is established, pursuant to the provisions of this act, the city officer herein provided for and designated as the Engineer of the Water Department, shall thereafter be appointed by such Board of Water Commissioners and his duties shall be prescribed by such board."
*448 The words "Whenever a Board of Water Commissioners is established pursuant to the provisions of this act," refer to section 37(38) of the act:
"37. The City Council shall have power to pass and adopt ordinances for the following purposes:

* * * * * * * *
(38) To establish, maintain and abolish, from time to time, a Board of Water Commissioners. Said Board of Water Commissioners, when established and appointed, shall have the custody, control and management of the waterworks and water supply of the city; and the said board shall have power and authority to maintain, repair, equip and extend the waterworks and water supply system of the city and each and every part thereof; and the said board shall have power and authority to establish and, from time to time, to change the rates to be charged for water supplied to the inhabitants of the city or others, and also to adopt and establish rules and regulations with respect to the use and protection of the water supply and waterworks and each and every part thereof.
Every rule, regulation or resolution of the Board of Water Commissioners shall, after its adoption by the Board, be submitted to the Mayor of the city; if he approve it he shall sign it and thereupon it shall become effective, and if he disapprove it he shall indorse thereon his disapproval and his reason for so doing and return it to the clerk of the board; and the board shall then reconsider the same at its next regular meeting, if upon such reconsideration it receives the affirmative votes of all members of the board, then it shall become effective, notwithstanding the disapproval of the Mayor.
The Mayor shall return to the board every rule, regulation or resolution presented to him within ten days after he receives it, otherwise the same shall become effective without the action of the Mayor thereon on the day following the expiration of said period of ten days.
The board shall have power and authority to employ a superintendent, water registrar, engineers and such other assistants as may be necessary, who shall thereby be and become city employes and also to make such contracts as are necessary or expedient in the conduct of the business intrusted to its care.
The moneys received from the inhabitants of the city or others for water supplied or other service performed by the water department and also the moneys raised by taxation or the issue of bonds in such city for the uses or purposes of the water department shall be paid to the Collector of Taxes, and shall be paid over to the City Treasurer to be kept by him in a special Fund to be known as the Water Department Fund which shall be paid out only on warrants signed by the Chairman or President of the Board of Water Commissioners and the Mayor.
*449 The said board shall, on or before a certain day in each year, to be fixed by the said board, cause a careful estimate to be made of the interest on the water debt and cost of managing, of keeping in repair and operation of the works for the ensuing year, and of the amount to be received during the same year for the use of water and water rents, and of the deficiency, if any, of such receipts for the payment of such expenditures, and shall report the same, in writing, to the City Council of said city, and the said deficiency said City Council shall raise by tax as other city taxes are assessed, levied and collected."
It is apparent that a board of water commissioners created pursuant to this section would be but a temporary body; one capable of being abolished at the whim of the city council. There is however, a section in the charter act which provides a method for the creation of a board of water commissioners whose existence is subject only to the will of the people. Section 37(39) provides:
"Whenever a petition shall be filed with the City Clerk, signed by at least one hundred citizens, who were enrolled as legal voters of the city at the time of the last preceding general or city election, requesting the submission to the voters of the city of a proposition to create or establish in such city any one or more of the aforesaid boards, then the City Council shall provide that such proposition or propositions be submitted to the legal voters of the city, either at the next general or city election or at a special election, in accordance with the prayer in said petition; and in the event that such proposition or propositions are submitted at a special election then the same shall be held within a period of sixty days from the date of the presentation of such petition to the City Council on a day to be fixed by it. * * *
If at an election held as hereinabove provided any such proposition be assented to by a majority of those of the legal voters of the city, who shall vote either for or against the adoption thereof, then it shall be the duty of the City Council to forthwith create and establish a Board of Water Commissioners, or other board, according to the proposition so submitted and adopted; any board created and established pursuant to any such vote may be abolished in a like manner and by a like vote and not otherwise."
On May 4, 1909, at a special election held in the City of East Orange, the establishment of a permanent board of water commissioners was authorized by the voters. Thereafter on June 15, 1909 the city council, acting pursuant to *450 subsection (39) just quoted, enacted Ordinance No. 29 establishing a board of water commissioners. A reading of that subsection indicates that a board of water commissioners contemplated by the subsection is not endowed with any greater power than a board created pursuant to section 37(38), supra.
The powers of the city council are specifically enumerated in section 36 of the Charter Act. Those powers which are relevant to the disposition of this action are:
"* * * (6) To acquire, either by condemnation or purchase, land or any interest therein for any public or municipal use, and to erect thereon or upon other land of the city a suitable building or buildings; provided that not more than twenty-five thousand dollars shall be expended in any one year for the purchase of land; and also provided that not more than fifty thousand dollars shall be expended in any one year for the erection of buildings, unless the proposed additional expenditure be approved by the vote of a majority of the legal voters of such city, voting upon such proposition submitted to them, at any general election.
(7) To issue corporate bonds of the city to provide for the cost and expense of acquiring land or erection of buildings, and the equipment of the same; and to provide the necessary funds wherewith to pay all the costs and expenses of the making or maintenance of any permanent public work or improvement.

* * * * * * * *
(13) To acquire, by purchase or condemnation, lands and real estate situated in any adjoining or neighboring municipality which are or may be deemed necessary or expedient to be taken for any public or municipal use or improvement; provided, however, the consent of the municipal authorities of such adjoining or neighboring municipality shall be first obtained to the acquisition of such lands."
It is provided in section 37 of the act that the city council has power to pass and adopt ordinances for (among others) the following purpose:
"* * * (23) To provide a supply of pure and wholesome water for the use of the city and its inhabitants, and water for fire and sprinkling purposes; and to establish a water department; and to regulate the use of water from any public supply; to fix and establish rates or charges, and to provide for the collection of the same. * * *"
*451 The city council is given the power in section 39 to raise monies by taxation for the following purposes:
"* * * (5) For the support and maintenance of the water department; including water for the extinguishment of fires, water supplied to the public buildings, and for other public purposes.

* * * * * * * *
(12) For the acquisition of land for any public or municipal use. * * *"
There can be no doubt that the Legislature has given the city council the express power to acquire land for the purpose of maintaining an adequate water supply. That power may be exercised only by ordinance and is further restricted to a set amount of money which can be expended in any one year without approval of the voters at a general election. The city council may either issue bonds or it may tax in order to provide the necessary funds for the acquisition of such land.
The powers which must be construed by this court are those relative to the acquisition and disposition of land necessary for purposes of water supply. For reasons which will be given later in this opinion, the power to dispose of municipal land not needed for public use cannot rest exclusively with the board of water commissioners. Therefore, the first question which will be examined is, which of the two bodies has exclusive power to acquire land needed for the waterworks and water supply of the city?
The city council is given the express power to acquire land necessary for the supply of water. The board of water commissioners, on the other hand, points to the language of section 37(38) wherein a board of water commissioners, when established and appointed, has the "custody, control and management," and authority to "maintain, repair, equip and extend" the waterworks and water supply system of the city. Unless and until a board of water commissioners is established, the city council can without question exercise the power to acquire such land as is needed for water supply *452 purposes. Defendants contend that this power is transferred to and vests in the board of water commissioners when the voters establish a permanent board pursuant to section 37(39) of the charter act.
At the outset, it must be reiterated that the powers which vest in an established board of water commissioners are not controlled by the manner in which the board comes into being. Whether it be a board established by ordinance pursuant to section 37(38), or one initiated by an affirmative vote of the electorate pursuant to section 37(39), the powers granted to the board by the Legislature remain the same. There can be no argument that upon its establishment a board of water commissioners is invested with a number of powers. These powers, say defendants, include all powers formerly vested in the city council relative to water matters and, more specifically, the power to acquire and dispose of land.
The case of Civil Service Commission v. O'Neill, 85 N.J.L. 92 (Sup. Ct. 1913), is cited by defendant board of water commissioners as controlling on this point. In that case the court necessarily analyzed the creation of the East Orange Board of Police Commissioners pursuant to section 37(39) of the 1908 Charter act. It was said that:
"The scheme of the charter act is obviously to provide an alternative system for the supervision of the entire police department by a municipal agency. In cases where the charter act is adopted generally, the plan provided by that act is that the mayor or the council or both shall act as a supervisory power and make the necessary rules and regulations for the conduct of the department. This is the course generally pursued in the smaller municipalities, and was evidently intended by the legislature to be pursued in cities coming within the classification of the act, where it was not thought worth while to assign these duties to an agency exclusively constituted to perform them. On the other hand, the citizens might prefer to have such special agency, and in that case by voting for and organizing the police commission they could obtain a body created expressly and exclusively for the purposes specified in the act and already set forth. This leaves the chief of police as still the head of the department, subject to the executive and legislative and supervisory action of the board of police commissioners, just as he was theretofore subject to *453 the legislative and executive and supervisory action of the mayor and council." (at page 94)
Defendants contend that it was determined by the court that once a board of police commissioners was created pursuant to L. 1908, c. 250, it became vested with all the legislative, executive and supervisory powers in respect to the police department that the city council formerly had.
It is submitted that this is not in fact what was determined by the court in the above case. It so happened that in the Civil Service Commission case the city council, by appointing one O'Neill as police chief, attempted to exercise a power which was expressly granted by the Legislature to an established board of police commissioners; the power to "control and regulate the appointment, suspension and dismissal of the officers, men and employee of the police department of said city." (L. 1908, c. 250, § 37(37).) Therefore, the court only determined that the city council could not exercise a power which was expressly granted by the Legislature to an established board of police commissioners.
With that determination this court is in accord. If the board of water commissioners in this case has the power to acquire lands, that power may certainly be exercised without city council approval. This line of reasoning, however, puts the cart before the horse since the question here is not how freely the board can exercise its power, but what power the board has to exercise.
The case of Kearny v. Jersey City, 78 N.J.L. 77 (Sup. Ct. 1909), affirmed 79 N.J.L. 599 (E. & A. 1910), cited by defendant board of water commissioners is also not controlling. In that case it was held that a contract made by the Board of Street and Water Commissioners of Jersey City did not require the assent of any other board, since the board of street and water commissioners was the governing body of the city with respect to water. The contract in that case did not involve the acquisition or disposition *454 of land, but the supply of water to a remote area outside the city limits. A reading of the general law under which the board of street and water commissioners acted (L. 1897, c. 128) shows that the board had exercised a power expressly granted to it by the Legislature. What is interesting about the case, however, is a general statute applicable to cities of the first class which was involved in it. That act (L. 1897, c. 142) expressly gives a board of street and water commissioners power to deal with land:
"2. The said board of street and water commissioners herein provided for, in any city aforesaid, shall be substituted for and become vested with and shall perform such of the powers, rights and duties as are herein specified, with such authority as may be by law vested in and imposed upon, or exercised by, the board of aldermen, common council, or other governing body or board of such city, * * *, and to have the government control and management of any public buildings, lands and real estate and personal property belonging to or connected with the public works and municipal affairs in this section specified, and which by the provisions of this act are placed under the government, control and management of such boards of street and water commissioners; * * * the power and authority vested in all other municipal boards established or existing in any such city at the time of the establishment of any board of street and water commissioners created by this act, in anywise relating to the real and personal property of such city, and not transferred by this act to such board of street and water commissioners, shall continue to remain vested in and conferred upon and exercised by such other existing municipal boards of such city, * * *." (Emphasis added)
It is also clear from the above language that any power to deal with land which was not expressly granted to the board of street and water commissioners would remain vested in the board originally having the power.
Defendants argue further that the terms "water supply" and "waterworks" necessarily include the water reserve lands. "Waterworks" is defined in 94 C.J.S., Waterworks, p. 465 (1956), as follows:
"A term which includes streams, springs, wells, pumps, engines and all machinery, lands, buildings, and things for supplying or used for supplying water; * * *." (Emphasis added) *455 The word "extend" is defined as meaning "to stretch out or draw to full length, spread out, expand, involve the occupation of space." American Collegiate Dictionary, p. 427. Therefore, by merely taking the two definitions and applying them to the board of water commissioners' express power to "extend" the "waterworks," a persuasive argument is made that the board has the power to acquire land needed for water supply. However, our Supreme Court has said that in the quest for the legislative intention "the letter gives way to the rationale of the expression" and that "The will of the lawgiver is to be found, not by a mechanical use of particular words and phrases, according to their actual denotation, but by the exercise of reason and judgment in assessing the expression as a composite whole." Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378 (1956).
A municipal corporation, being a creature of the Legislature, can exercise only those powers granted to it by the Legislature in express terms, by necessary and fair implication, or such as are incidental to powers expressly conferred. Yardville Estates, Inc. v. City of Trenton, 66 N.J. Super. 51 (App. Div. 1961). While municipal powers should be construed liberally, the agency which exercises a granted power, as well as the manner in which the power is exercised, must be in accordance with the legislative scheme. Cf. Botkin v. Mayor and Borough, etc., of Westwood, 52 N.J. Super. 416 (App. Div. 1958), appeal dismissed 28 N.J. 218 (1958). In the Botkin case the court held that the borough governing body was not empowered to seek or take action in school district affairs except in the few areas expressly permitted by the Legislature.
Where a power is expressly given, municipal exercise of the power in excess of that set forth in the grant will be set aside. In the case of State, Gregory et al., Prosecutor v. Mayor, etc., of Jersey City, 36 N.J.L. 166 (Sup. Ct. 1873), two resolutions of the Board of Public Works of Jersey City authorizing the purchase of land to be used *456 as a site for the city hall were set aside because of noncompliance with the limitations imposed upon the exercise of an express power.
If the governing body of a municipality can exercise only those powers granted to it by the Legislature, it is obvious that the same rule applies with equal force to agencies within the municipality. It was shown earlier in this opinion, by reference to the applicable provisions of the charter act, that the Legislature expressly gave the city council power to acquire lands. It was also shown that the city council's power in this respect is limited in that its yearly expenditure for lands cannot exceed $25,000. The Legislature saw fit to spell out the city council's power to acquire land in clear and unequivocal language, and it also saw fit to restrict that power in language equally as clear. Could it have been the legislative intent to invest a subordinate agency, comprised of appointed rather than elected officials, with a much broader, virtually unrestricted, power to acquire land, by the inclusion of language which is, to say the least, vague?
If the Legislature intended to confer upon the board of water commissioners the power to acquire land, it would have done so in language of equal dignity to that which conferred the power on the city council. The charter act here being construed does not expressly give the board of water commissioners power to acquire land, nor does it expressly substitute the board of water commissioners in place of the city council and vest in it all the power, rights and duties initially granted to the city council with reference to the acquisition of land necessary for the water supply of the city. Cf. N.J.S.A. 40:62-105.1, 105.2, wherein the Legislature provided that the elected water commissioners of a water district "shall succeed to the duties presently exercised by the township committee together with such other duties as are herein contained," and "shall have power to hold, purchase, lease and convey, in their corporate name, *457 such real and personal estate as the purposes of the corporation shall require."
In light of the overall purpose of the statute under construction, this court finds that the language therein which gives the Board of Water Commissioners of East Orange the power to maintain, repair, equip and extend the waterworks and water supply system of the city cannot be construed to include the power to acquire lands necessary for the purpose of water supply.
The ordinance which created the board of water commissioners also conferred upon that board such powers and duties as may be conferred by or prescribed in any general law of the State of New Jersey applicable to such board. It is argued that there is such a general law applicable to the board of water commissioners, and the power to acquire lands is therein expressly granted to it. The statute referred to is R.S. 40:60-2 which provides:
"Every municipality may acquire, by gift, devise, purchase or condemnation any real estate, and any easements, materials, waters, water rights or other property, and any interest or estate whatsoever therein, either within or without the municipality, or any outstanding easement, right or interest in any real estate, in its possession, which its governing body shall decide to be necessary or useful for the proper exercise of any power conferred upon the municipality by this or any other law; * * *." (Emphasis added)
The term "governing body" is defined in R.S. 40:42-2 as follows:
"The term `governing body,' where used in this subtitle. [Subtitle 3. Municipalities Generally] shall be construed to mean the board or body in each municipality designated by statute effective in such municipality as the board or body having control over the subject matter in connection with which the term is used, and having the power and authority to legislate thereon, whether designated as `board of aldermen,' `common council,' `board of commissioners,' `borough council,' `township committee,' `village trustees,' `improvement commission,' `board of street and water commissioners,' `board of public works,' `board of finance,' `board of health,' `park commissioners,' `recreation commissioners,' or otherwise." *458 Since R.S. 40:60-1 et seq. is a part of chapter 60, "Public Lands and Buildings," article I, "Acquisition," the subject matter in connection with which the term "governing body" is used in R.S. 40:60-2 is clearly "acquisition of real estate." This court holds that the body designated by statute effective in the City of East Orange as the body having control over the acquisition of real estate, and having the power and authority to legislate thereon, is the city council. The provisions of R.S. 40:60-2 cannot by a boostrap operation be construed to give to the board of water commissioners a power which the Legislature expressly granted to the city council. This interpretation is in accordance with R.S. 40:42-3, which provides:
"No provision of this subtitle shall be construed to take [away] from any officer, board or body in any municipality any power or authority which he or it may now have. * * *"
This court has determined that the City Council of the City of East Orange has the exclusive power to acquire any right, title or interest in land necessary for the supply of water. The next question to be answered is, does the board of water commissioners' power of "custody, control and management of the waterworks and water supply system," and its power to "make such contracts as are necessary or expedient in the conduct of the business intrusted to its care," include the power to dispose of any right, title or interest in water reserve land exclusive of city council control?
Defendant board of water commissioners cites the case of Upham v. Plankinton, 152 Wis. 275, 140 N.W. 5, 48 L.R.A., N.S., 1004 (Sup. Ct. 1913), and the case of Trust Company of New Jersey v. Greenwood Cemetery, 21 N.J. Misc. 169, 132 A.2d 519 (Ch. 1943), in support of the argument that the words "custody, control and management" should be construed so as to include the power to dispose of land. The Upham case involved the construction of a trustee's power under a will wherein he was given *459 control, management and charge of the estate. The court held that the trustee had the implied power to lease lands which were part of the estate. The Trust Company of New Jersey case also involved a construction of the words "custody and control." The court, at page 175, said that:
"The words * * * `custody and control' have different shades of meaning and are susceptible of several interpretations and therefore are too ambiguous and uncertain to be relied on * * *."
The court also said, however, that "To `control' a thing is to have the right to exercise a directing or governing influence over it * * *."
A further argument is made that in accordance with established principles of trust law, the board of water commissioners, acting as trustees of the waterworks and water supply system of the City of East Orange, has implied power to lease the trust lands.
While the above arguments are persuasive, this court must hold that the board of water commissioners cannot exercise exclusive control over the disposition of water reserve lands. This conclusion is necessitated by the mandatory provisions of N.J.S.A. 40:60-26.
N.J.S.A. 40:60-26 falls within article 2 ("Sale or Other Disposition") of chapter 60, "Public Lands and Buildings." It provides that:
"The governing body of any municipality may sell any lands or buildings or any right or interest therein not needed for public use. All such sales or disposition except as provided in sections 40:60-27 to 40:60-29 of this Title shall be authorized to be made by 1 of the following methods: * * *."
It is not necessary to set out at length the four methods by which lands (or interests therein) not needed for public use may be sold or otherwise disposed of. Suffice it to say that each of the methods set forth provides for the maximum protection of the public interest. Notice to the public is made mandatory to assure a disposition of the *460 land in a manner most favorable to the taxpayers, to assure uniform conditions of the sale or other disposition, and to prevent favoritism.
It is the rule in New Jersey that when a municipality distributes water to its inhabitants for domestic and commercial uses, it exercises a private or proprietary function. Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229 (1952). It has been said that when a municipality undertakes the obligation of providing water to its inhabitants it proceeds "not by virtue of the exercise of the power of sovereignty" but that it engages in "a business which is public in its nature, and belongs to that class of occupations or enterprises upon which public interest is impressed," City of Chicago v. Northwestern Mut. Life Ins. Co., 218 Ill. 40, 75 N.E. 803, 1 L.R.A., N.S., 770 (Sup. Ct. 1905). Also, "A public water company is under a duty as a public utility to supply water to all inhabitants of the community who apply for the service and tender the usual rates." Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229, 234 (1952).
There can be no doubt that the lands which comprise the water reserve of the City of East Orange are lands which are devoted to a public use. Therefore, all sales or dispositions of any right or interest therein must be made pursuant to N.J.S.A. 40:60-26.
In each of the four methods of disposition provided by N.J.S.A. 40:60-26, the term "governing body" is employed. Applying the definition of that term pursuant to R.S. 40:42-2 it can readily be seen that the subject matter in connection with which the term is used is again "Public Lands and Buildings." This court has already held that the City Council of East Orange is the body designated by its charter as having control over the acquisition of lands necessary for water supply. The city charter is silent, however, as to how land held by the city may be disposed of, or by whom. N.J.S.A. 40:60-26, which sets forth the manner in which land not needed for public *461 use may be disposed of, is a part of the Home Rule Act, L. 1917, c. 152. The Home Rule Act is in effect a revision of all existing laws conferring power on municipalities. Shedden v. Hagmann, 128 N.J.L. 200 (Sup. Ct. 1942). Besides setting forth the manner of disposition, N.J.S.A. 40:60-26 expressly provides that regardless of the method used, the "governing body" of the municipality initiates and controls the sale. Looking to the construction of the term "governing body" in R.S. 40:42-3, the following is there set out:
"* * * In case any additional power is conferred upon any municipality by this subtitle and no board or body is designated by the statutes effective in such municipality as the one that exercises such power, then the term `governing body' shall be construed to mean the board or body exercising general legislative power in such municipality." (Emphasis added)
The power to sell or otherwise dispose of land not needed for public use is conferred upon all municipalities by force of N.J.S.A. 40:60-26. No equivalent power is expressly conferred upon the City of East Orange by its municipal charter. Therefore, it must be viewed as an additional power to be exercised by the body having general legislative power in the municipality, the City Council of the City of East Orange.
In the complaint plaintiffs demand that the easement granted by the board of water commissioners to defendant Transcontinental be set aside. The pretrial order indicates that similar relief is demanded as to the lease executed to defendant Jersey Central. There can be no doubt that the action taken by the board of water commissioners in each case was a disposition of a right or an interest in land such as is contemplated by N.J.S.A. 40:60-26. Cf. Charles Realty Co. v. City of Newark, 136 N.J. Eq. 212 (E. & A. 1944). There is also no doubt that in each case the statute was not complied with.
As stated earlier in this opinion, defendant Transcontinental raises the affirmative defense of estoppel against the *462 city council and maintains that its easement is valid and subsisting. (The defendant Jersey Central takes no position as to the validity of its lease, but relies on this court's decision.) The affirmative defense here being invoked is that the city council by its inaction is precluded from now taking a course of action which would work a hardship and injustice to defendant Transcontinental, who with good reason and in good faith has relied on such conduct.
Transcontinental began its negotiations with the board of water commissioners on January 12, 1959. From that date on a series of communications was sent to the board of water commissioners from Transcontinental. These communications show that as early as May 1959, Transcontinental found it necessary to proceed with construction of the pipeline and urged the board of water commissioners to expedite the easement as quickly as possible. In that same month Transcontinental paid $3500 to the board for the installation of two 16" valves on either side of the proposed right of way. Transcontinental informed the board that "time was running out" and that construction of the pipeline could not wait until the signing of the agreement. The board of water commissioners gave Transcontinental permission to begin construction of its pipeline in July 1959. Also in July, the entire file of the board of water commissioners relative to the proposed easement was turned over to the law department of the City of East Orange in order that an instrument might be prepared. An instrument was prepared by the law department naming the city council as grantor, since it was the opinion of the law department that the board of water commissioners did not have the power to make such an agreement. Subsequently, members of the law department appeared at meetings of the board of water commissioners and explained the city council's position. The board informed them that if necessary they would seek other attorneys to draw up the grant. The instrument was finally drawn by attorneys representing Transcontinental and was received by the board of water commissioners on March *463 11, 1960. Throughout the entire period from July 1959 to March 1960 the city council, through its law department, had knowledge of the construction which Transcontinental started in July 1959 and completed in December 1959. This action was finally commenced in June 1960, after Transcontinental had paid the board of water commissioners the total monetary consideration under the grant and after it had expended large sums of money to complete the pipeline.
This court does not approve the procedure followed by the Board of Water Commissioners in its dealings with the defendant Transcontinental. To allow construction of the pipeline to commence, with knowledge that there was a question of its jurisdiction in this matter, was certainly unwise. However, even if the board had had complete jurisdiction, the procedure followed by it was contrary to the legislative scheme. By the mandate of L. 1908, c. 250, § 37(38):
"* * * Every rule, regulation or resolution of the Board of Water Commissioners shall, after its adoption by the Board, be submitted to the Mayor of the city; if he approve it he shall sign it and thereupon it shall become effective, and if he disapprove it he shall indorse thereon his disapproval and his reason for so doing and return it to the clerk of the board; and the board shall then reconsider the same at its next regular meeting, if upon such reconsideration it receives the affirmative votes of all members of the board, then it shall become effective, notwithstanding the disapproval of the Mayor.
The Mayor shall return to the board every rule, regulation or resolution presented to him within ten days after he receives it, otherwise the same shall become effective without the action of the Mayor thereon on the day following the expiration of said period of ten days. * * *"
To permit an act to be completed first and then to follow the above procedure and make the effective date retroactive cannot be what the Legislature intended by this section. This procedure, however, was known to the plaintiff city council, but that body took no affirmative action to correct it or to prevent the construction of the pipeline by Transcontinental.
*464 The doctrine of estoppel applies against municipal corporations. Vogt v. Borough of Belmar, 14 N.J. 195 (1954). In Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 504 (1955), it was said:
"There is a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional. The former are ultra vires in the primary sense and void; the latter, ultra vires only in a secondary sense which does not preclude ratification or the application of the doctrine of estoppel in the interest of equity and essential justice."
It is also well established in this jurisdiction that a municipality can ratify a contract entered into by an unauthorized agent as long as the contract is within the corporate power and not ultra vires in the primary sense. Johnson v. Hospital Service Plan of N.J., 25 N.J. 134 (1957). The intent to ratify an unauthorized transaction may be inferred from a failure to repudiate it. Restatement, Agency 2d, § 94, p. 244 (1957). Also McQuillin, Municipal Corporations (3d ed. 1950), § 29.106, pp. 435, 436, 437, states that a city may be bound by inaction, and that mere silence, the performance of the contract, or the acceptance of benefits under it can constitute ratification.
The act complained of here was ultra vires in a secondary sense, since the power to dispose of a right or an interest in the water reserve land is within the municipality's essential jurisdiction by force of N.J.S.A. 40:60-26.
It is the holding of this court that plaintiffs are estopped from contesting the validity of the easement granted by the board of water commissioners to defendant Transcontinental. While the doctrine of estoppel is not applied to a governmental agency performing a governmental function to the same extent as it is against individuals and private corporations, it has been invoked by our courts to prevent manifest wrong and injustice. Feldman v. Urban Commercial, Inc., 70 N.J. Super. 463, 477 (Ch. Div. 1961). In the last cited *465 case the doctrine was not applied against an agency (occupying a status similar to a municipality) due to the fact that no manifest wrong or injustice was suffered such as was found in Vogt v. Belmar and Johnson v. Hospital Service Plan of N.J., supra. In this case, however, the city council remained inactive throughout the entire period of time it took Transcontinental to construct the pipeline and for some time thereafter, although it had full knowledge of the project. In this regard the following language, taken from Summer Cottagers' Ass'n of Cape May v. City of Cape May, supra, wherein the doctrine of estoppel was applied, is directly in point:
"And there is in the particular circumstances a preclusion in equity and elemental justice against the relief demanded by plaintiffs. Interposing no challenge to the adequacy of the price paid for the lots, they would now vacate the sale after the erection of a structure of great value, a project known to them at the outset which in its very nature called for timely action lest the landowners be misled to their injury by the reasonable implications of nonaction." (19 N.J., at p. 506) (emphasis added)
As to defendant Jersey Central, it should be noted that at the pretrial no factual contentions were offered on its behalf. At the trial Jersey Central failed to make any argument as to why the lease executed to it by the board of water commissioners should not be invalidated and set aside. No facts have been brought forth by this defendant showing that it would suffer manifest wrong or injustice if the lease was invalidated. The situation of this defendant is quite unlike that of defendant Transcontinental. Therefore, this court holds the lease to be invalid and orders it set aside.
For the reasons given in the body of this opinion, this court declares that all right, title and interest in the lands commonly known and designated as the water reserve of the City of East Orange are vested in the City of East Orange, and that the power to acquire, sell or otherwise dispose of any right, title or interest in the aforesaid lands *466 rests exclusively in the body exercising general legislative power in that city, the City Council of the City of East Orange. The Board of Water Commissioners of the City of East Orange is enjoined from hereafter attempting to acquire, transfer, impair, encumber or otherwise dispose of any right, title or interest in the water reserve lands. Plaintiffs are estopped from contesting the validity of the easement granted to defendant Transcontinental Gas Pipe Line Corporation. Therefore, plaintiffs' demand that the aforesaid easement be declared invalid and be set aside is denied. The lease executed between the board of water commissioners and defendant Jersey Central Power & Light Company is declared invalid and is hereby ordered set aside.
An order may be submitted which is in conformity with this opinion.