ESTELLE I. STROCK ET AL., PROSECUTORS, v. THE
MAYOR AND CITY COUNCIL OF EAST ORANGE ET AL.

Argued November 6, 1908—Decided February 23, 1909.

So much of section 3 of "An act to provide for the establishment of
    public playgrounds in cities of this state and for the maintenance,
    control and management thereof" (*Pamph. L.* 1907, *p.* 279, as
    amended in *Pamph. L.* 1908, *p.* 163), as purports to authorize
    permits for the use of playgrounds having at least five acres area
    for outdoor exhibitions, &c., upon such terms as the board of
    playground commissioners deems proper, including the permit to
    charge an admission fee, is unconstitutional, both as establishing
    an illusory classification and as authorizing the gift of munici-
    pal property in aid of individuals or associations.

On *certiorari.*

Before Justices GARRISON, PARKER and VOORHEES.

For the prosecutors, *Ralph E. Lum.*

For the defendants, *Jerome D. Gedney.*

The opinion of the court was delivered by

PARKER, J.   By chapter 117 of the laws of 1907 (*Pamph.
L., p.* 279, as amended by *Pamph. L.* 1908, *p.* 163), it is pro-
vided that in any city a board of three playground commis-
sioners may be appointed, which board shall select tracts of
land suitable for public playgrounds and recreation places,
which tracts may be purchased or condemned by the city and
when acquired shall be under the control of said board.   Sec-
tion 3 of the act, as amended in 1908, contains, among other
provisions, the following: That "the board shall have power
and authority, in its discretion, to grant permits from time
to time for the use of the whole or any part of any playground
or recreation place having an area of at least five acres, for
an outdoor exhibition, concert, game or contest upon such
terms and conditions as it may deem proper,   *   *   *   may

authorize the holder of any such permit to charge and collect an admission fee from each person entering the playground or recreation place to witness such exhibition, concert, game or contest, provided that no such permit shall be given for the use of such ground or place for more than twenty-four hours."

The city of East Orange having acquired a tract of over five acres known as the East Orange Oval, under the provisions of this law, the board of playground commissioners, on October 19th, 1908, passed the following resolution, which is brought up by the writ of *certiorari* in this case:

"*Resolved,* That the Orange Athletic Club be allowed the use of the East Orange Oval for a game of football with an opposing team for October 23d, at three (3) P. M., on condition that forty per cent. (40 %) of the gross receipts be paid for the use of the grounds; the Commission to furnish police and ticket sellers; the Orange Athletic Club to pay all other expenses; and on further condition that the price of admission to the grounds be twenty-five (25c.) cents and twenty-five cents (25c.) for admission to the grand stand, and that no charge be made to children, resident in the city of East Orange, under fourteen years of age, or to other persons holding permits for use of tennis courts or other appurtenances."

There can be no doubt that this resolution is warranted by the terms of the act as above quoted, but the prosecutors attack the act itself as unconstitutional, and we think they are right as respects the extract given above, which is all that need be considered for the purposes of this case. The act by its title and general terms applies to all cities, but authorizes the permits for use of playgrounds only when they are of over five acres in area and then on any terms the commissioners may see fit to make. The question at once arises, why should playgrounds of five acres and over be erected into a class available for special and exclusive permits, and those of less than five acres unavailable? No reasonable explanation of this division is offered. If the larger grounds accommodate games like baseball and football, the smaller ones, which are inadequate for these purposes, are still available for games or exhi-

bitions taking up less room; and when we note that the larger grounds may be conceded for exhibitions, &c., in part only if desired, the distinction of size loses all of its force. We conclude, therefore, that a classification which divides city playgrounds for purposes of special permits for exhibitions, &c., into two classes, according to acreage, is illusory, and is obnoxious to the provision of the constitution forbidding local or special legislation regulating the internal affairs of towns and counties.

We think, also, that the authority conferred on these commissioners to permit the use of public playgrounds for exhibitions and games on such terms as they deem proper, is in violation of the spirit, if not the letter, of sections 19 and 20 of article 1 of the constitution, which provide that "no city * * * shall * * * give any money or property * * * to or in aid of any individual, association or corporation," and section 20, "no donation of land or appropriation of money shall be made by the state or any municipal corporation to or for the use of any society, association or corporation whatever." It is said that the resolution brought up amounts only to the renting out of city property for a fair and adequate compensation. Granting the power of a municipal corporation to go into the exhibition business for profit, or to make money by renting out public playgrounds, the point in issue is not so much what has been done in the present case under this statute as what may be done under it, and it will be seen at a glance that it would authorize the commissioners, through a series of twenty-four-hour permits, to bestow on baseball, football and other athletic or musical organizations the free use of the city's playground, paid for with public money, with the right to charge admission fees for their own benefit. The act contemplates also the erection of buildings, and any building available as an auditorium might be turned over without charge or at a nominal charge for concerts profitable only to the association giving them. This would be taking from the public its property rights and giving them to private persons, and therefore, in our opinion, the statute itself is obnoxious to the constitutional provisions

last quoted; and this part of the statute being invalid, it follows that the board had no authority to grant exclusive permits for the use of the playgrounds or any part thereof, on any terms involving the right of parties to whom permits are granted to charge admission fees or to exclude the public from witnessing the exhibitions or contests in question.

For these reasons the resolution brought up will be set aside.