248 N.J. Super. 597 (1991)
591 A.2d 995
AQN ASSOCIATES, INC., PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF FLORENCE AND THE MAYOR AND TOWNSHIP COUNCIL OF THE TOWNSHIP OF FLORENCE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1991.
Decided June 7, 1991.
*601 Before Judges SHEBELL, HAVEY and SKILLMAN.
William J. Wolf argued the cause for appellant (Bathgate, Wegener, Dugan, Wouters, Neumann & Wolf, attorneys; William J. Wolf, of counsel; William R. Mayer, Howard P. Lakind and Michael M. DiCicco, on the brief).
Michael D. Matteo argued the cause for respondents (Montgomery, McCracken, Walker & Rhoads, attorneys; Michael D. Matteo, of counsel; Ramiro M. Carbonell, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
*602 Plaintiff, AQN Associates, Inc. (AQN), appeals contesting grants of summary judgment dismissing its complaints that sought to invalidate bond ordinances adopted by the Township of Florence (Florence). The bonds were to finance Florence's obligation to the Township of Pemberton (Pemberton). The obligation arose out of a Regional Contribution Agreement (RCA) between the two municipalities, under which Florence transferred 103 units of its fair share obligation to Pemberton in exchange for the payment of $15,000 per unit. Pemberton will use the monies to rehabilitate units of housing within its borders.
In January 1987, Florence filed a petition for substantive certification with the Council on Affordable Housing (COAH), which petition is currently pending. AQN owns approximately 130 acres in Florence. AQN has filed an objection with COAH to Florence's fair share plan asserting essentially that AQN's property was more appropriate for high density development than the property identified in Florence's plan. See N.J.S.A. 52:27D-314; N.J.S.A. 52:27D-315. Mediation failed to resolve AQN's objections. Issues raised in the mediation have been referred to the Office of Administrative Law. See N.J.S.A. 52:27D-315.
A major element of the fair share plan supporting Florence's petition is the RCA, which it seeks to bond. Florence and Pemberton entered into their RCA on June 21, 1989. The RCA was made contingent on adoption of a bond ordinance by Florence. The RCA was approved by the Burlington County Planning Board on February 27, 1990, and by COAH on March 19, 1990. See N.J.S.A. 52:27D-312(c).
On February 7, 1990, Florence held a public hearing and adopted an ordinance that authorized the issuance of $1,545,000 in general obligation bonds to finance its RCA payments. On March 2, 1990, AQN filed an action in lieu of prerogative writs claiming that the ordinance was "illegal and invalid." Florence *603 received notice that AQN had filed a complaint challenging the ordinance, and on March 23, 1990, Florence obtained an order to show cause why AQN's complaint should not be dismissed by way of summary judgment or for failure to state a claim. The hearing was scheduled for April 2, 1990.
On March 19, 1990, Florence issued a $245,000 bond anticipation note, and used the proceeds to make the non-refundable first payment due to Pemberton under the RCA. On March 28, 1990, AQN amended its complaint to include six counts, each of which set forth a specific reason why the bond ordinance should be invalidated.
On April 2, 1990, the court, by consent, proceeded as if it had received cross-motions for summary judgment. The Law Division judge rendered an oral opinion dismissing all but one of AQN's claims. The only claim not dismissing at that time was the assertion that the ordinance had been adopted in violation of the Open Public Meetings Act, N.J.S.A. 10:4-6 to -21. The court directed Florence to file an affidavit from the municipal clerk providing details of the notice given. Florence submitted an affidavit from its clerk, which demonstrated that the notice required by the Open Public Meetings Act had been given. AQN then asserted that although the clerk's affidavit demonstrated that Florence had complied with N.J.S.A. 10:4-18, there was a failure to comply with N.J.S.A. 10:4-10(a). On April 11, 1990, the judge rejected this assertion and entered an order for summary judgment in favor of Florence. AQN filed a timely notice of appeal from that order.
On September 4, 1990, Florence adopted an ordinance "amending and supplementing" its original bond ordinance. The supplemental bond ordinance revised section one of the original ordinance and authorized the raising of $1,665,000 by bonding. It also revised section five of the original bond ordinance to increase the amount to be raised to cover Florence's interest costs, issuance costs, and "other items of expense listed and permitted under Section 40A:2-20 of the [Local *604 Bond] Law." The amended ordinance preserved the declaration in the original bond ordinance that its purpose was not to satisfy a "current expense" and that the period of usefulness of the purpose was not less than ten years.
On October 10, 1990, AQN filed a complaint raising virtually the same challenges to the supplemental ordinance that it had raised to the original ordinance. On November 2, 1990, the court, with the consent of the parties, executed an order dismissing the complaint for the reasons set forth in its April 2 oral opinion and April 11 order regarding the earlier action. AQN filed a timely notice of appeal. We have consolidated both appeals.
Appellant asserts that Florence's obligations pursuant to its RCA with Pemberton constitute "current expenses" because the municipality's payments are due and payable within twenty-five months. It therefore urges that bonds may not issue to finance Florence's RCA obligations as N.J.S.A. 40A:2-3(b) prohibits the bonding of current expenses. Florence contends that the trial court correctly determined that the satisfaction of its RCA obligations has a useful life of at least six years and therefore may be financed with bonds. We hold that the RCA payments under review are bondable.
The Local Bond Law, N.J.S.A. 40A:2-1 to -64, grants municipalities the power to issue bonds for "any capital improvement ..., or any purpose for which it is authorized or required by law to make an appropriation, except current expenses. ..." N.J.S.A. 40A:2-3(a) and (b) (emphasis added). The statute does not define the term "current expenses." AQN contends that if RCA contributions were capital expenditures and not current expenses, there would have been no reason for the Legislature to include a specific exemption from the Cap Law, N.J.S.A. 40A:4-45.2 et seq., in N.J.S.A. 52:27D-312(d). N.J.S.A. 40A:4-45.2 prohibits municipalities from increasing their "final appropriations" by more than five percent per annum. Excepted from the Cap Law are a variety of expenditures, including *605 "capital expenditures." N.J.S.A. 40A:4-45.3(b). N.J.S.A. 52:27D-312(d) specifically provides that RCA contributions are exempt from the limitations imposed by the Cap Law. AQN reasons that because the Legislature created the specific exemption in N.J.S.A. 52:27D-312(d), it must have considered RCA contributions to be current expenses covered by the Cap Law.
It is just as likely that the Legislature enacted N.J.S.A. 52:27D-312(d) out of an abundance of caution rather than because of a perception that, without that provision, RCA contributions would be non-capital expenditures subject to the Cap Law. The mere enumeration by the Legislature of its intention to exempt RCA contributions from the Cap Law need not be interpreted to reflect anything more than a desire to avoid requiring judicial determination of whether RCA contributions are capital or non-capital expenditures. In any event, it is clear that non-capital expenditures may, nonetheless, be financed by bonds as long as they are not current expenses. N.J.S.A. 40A:2-3(b).
AQN further argues that because N.J.S.A. 52:27D-312(d) requires that RCA monies be "appropriated annually by the sending municipality," RCA monies therefore constitute expense in each year and are clearly current expenses within the meaning of the Local Bond Law. We are convinced that neither N.J.S.A. 52:27D-312(d) nor any other provision of the Fair Housing Act, N.J.S.A. 52:27D-301 to -329, evidences a legislative intent to prohibit municipalities from bonding their RCA obligations. The purpose of N.J.S.A. 52:27D-312(d) is to provide a mechanism for the enforcement of a sending municipality's obligations. That mechanism is not compromised if the obligation is financed through bonding rather than with the collection of annual taxes. Each of the municipality's payments will still have to appear in its budget for the year in which that payment is due, and its budget will be subject to the usual monitoring by the Division of Local Government Services.
*606 Although silent as to the definition of current expenses, the statute specifically prohibits bonding for "any improvement or purpose having a period of usefulness of less than 5 years." N.J.S.A. 40A:2-21. Thus, even if an expenditure is not clearly a current expense, if the useful life of its purpose is less than five years, it may not be bonded.
The bondability of a given purpose under N.J.S.A. 40A:2-21 should be determined with reference to the intent and purposes of the five-year provision. This limitation protects taxpayers in the bonding municipality from being saddled with debt from which they obtain no benefit at a time when their repayment obligation is nonetheless continuing. Therefore, we focus our bondability analysis on what the taxpayers of the bonding municipality obtain as a benefit in exchange for the bond proceeds, rather than the use to which the payments are put by the receiving municipality under the RCA. We find this focus preferable as assessment of the future uses of the payment would be unmanageable and speculative at this juncture.
In the present case, the taxpayers of Florence are using the proceeds from their bond to satisfy a substantial portion of their fair share obligation. Its ultimate use to rehabilitate housing in Pemberton or to administer a program to carry out that rehabilitation is not of immediate or direct financial consequence to the taxpayers of Florence. So long as Florence makes the payments required by the COAH-approved RCA, it will receive credit for 103 units of its fair share housing obligation; this is the benefit that motivated Florence to enter into the RCA.
Viewing satisfaction of its fair share obligation, rather than rehabilitation of 103 units of housing, as the purpose of Florence's bond ordinance, we must next determine the useful life of the benefit  fulfillment of Florence's fair share obligation. We conclude that the useful life of the purpose of the expenditure is at least the six-year period of repose that is gained by *607 Florence from the grant of substantive certification under the Fair Housing Act. See N.J.S.A. 52:27D-313.
AQN also asserts that the RCA has a useful life of less than five years because it is subject to rescission at any time if certain conditions are not satisfied. Obviously many municipal contracts, even those for capital projects, may contain a number of contingencies. AQN's argument, if accepted, would cause municipal improvements or purposes, when entered into through contracts carefully drafted to protect the rights of the municipality, to suffer the detriment of having a useful life of less than five years. The Legislature cannot have intended this result under the Local Bond Law.
AQN argues that the bond ordinance should be invalidated because its purpose has a useful life of no more than six years. It is urged that the taxpayers of Florence will be paying for the RCA in the seventh, eighth, ninth, and tenth years of the bonds' lives even though the taxpayers may not be gaining a benefit from the RCA during those years because the period of repose will have elapsed. This would violate a fundamental provision of the Local Bond Law as N.J.S.A. 40A:2-26(a) requires that bonds mature within the useful life of their purpose.
Florence reasons that a ten-year useful life of the purpose of the expenditure has been properly established under N.J.S.A. 40A:2-22 because after its initial period of substantive certification has lapsed, Florence will continue to benefit from having satisfied 103 units of upgraded and available housing to meet the future needs of the region or it may under regulations enacted in the future be entitled to credit for this past compliance. See generally N.J.A.C. 5:92-4.1. Thus, Florence asserts that a ten-year useful life for the benefits of its RCA was properly derived by considering (1) the six-year period of the original substantive certification, (2) the fifteen-year "default" useful life provided for in N.J.S.A. 40A:2-22(i), and (3) the potentially infinite useful life that may arise if Florence receives *608 credit for the 103 units when it re-petitions for substantive certification after its original certification has expired.
We conclude that Florence's ten-year formulation is unduly speculative as it is dependent on future agency or legislative action which may not result in the enactments that Florence anticipates. The six-year period of repose under N.J.S.A. 52:27D-313 is the safe and proper measure of the useful life of Florence's obligation under the RCA. This more conservative approach is in better alignment with the purposes of N.J.S.A. 40A:2-26(a).
The appropriate remedy, however, is not to invalidate the bond ordinance. Rather, by operation of law, we deem the ordinance to provide for a maturation period of six years, and we require Florence to amend its ordinance accordingly. This remedy should not cause a substantial delay in Florence's ability to fulfill its fair share obligations. All but its final payment has been made under the RCA, and Florence has regularly arranged temporary financing in anticipation of selling its bonds.
In addition to its statutory challenge of Florence's bond ordinance, AQN contends that the ordinance violates the constitutional prohibition against the use of public monies for private purposes. It asserts that the bond proceeds will be given or loaned to Pemberton's private citizens for the rehabilitation of their private homes, and that the bonds are nothing more than a device to secure the obligations of Florence's developers to pay certain fees for bonus density, which are to be transferred to Pemberton pursuant to the RCA. These contentions implicate the following provisions of our State Constitution. N.J. Const. of 1947, art. VIII, § 3, para. 2 provides:
No county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, *609 association or corporation, or become security for, or be directly or indirectly the owner of, any stock or bonds of any association or corporation.
N.J. Const. of 1947, art. VIII, § 3, para. 3 provides:
No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever.
Our Supreme Court described these constitutional provisions as establishing the "fundamental doctrine" that "public money should be raised and used only for public purposes." Roe v. Kervick, 42 N.J. 191, 207, 199 A.2d 834 (1964). When these provisions are brought into play, a court should ask:
Is the transaction, involving the transfer of public money, contractual in nature, and if so, is it based upon a substantial consideration from the recipient of the money apart from simply an obligation to repay the money with interest, which consideration is intimately associated and burdened with execution of the public purpose of the statute? Is the agreement of the recipient of the financial assistance to accomplish the public purpose of the statute, i.e., relief of unemployment, the paramount factor in the contract, and is any private advantage incidental and subordinate? If answers to these questions are in the affirmative then the financial assistance contracted to be given by the Authority and the county or municipality is in return for an undertaking to bring about the public purpose within the framework the safeguards of the statute. Such a transaction does not constitute a forbidden loan within the contemplation of Article VIII of the Constitution. It is a valid compact based upon an exchange of substantial considerations. [Id. at 218, 199 A.2d 834].
The consideration for the monies to be paid by Florence consists of Pemberton's acceptance of 103 units of Florence's fair share obligation. See generally N.J.S.A. 52:27D-302(a) (recognizing each municipality's constitutional obligation to provide for its fair share of its region's need for affordable housing). In consideration for the payment of $15,000 per unit, Florence will be relieved of the burdens associated with the construction or rehabilitation of 103 units of affordable housing. That consideration is, undeniably, "intimately associated" with a public purpose.
AQN's argument is based in part upon Florence's intention to retire its bonds with fees that it expects to receive from developers in exchange for its approval of development at a substantially greater density than would otherwise be approved. From this, AQN concludes that "the monies raised *610 through the issuance of the bonds will be used to permit developers to avoid their obligations to construct low and moderate income housing." In the view of the citizens of Florence, the "paramount factor in the contract" is that a substantial portion of their fair share is deemed satisfied, not that individual homeowners will receive grants or loans and not that certain developers will derive a benefit through density bonuses.
Further, it is the municipality, not the developers, that has the obligation to provide the opportunity for the construction of affordable housing. Florence, not its developers, is obligated under the RCA. Florence agreed to approve that greater density of development in exchange for the payment of money by the developers. The developers' fees serve to reimburse Florence for the RCA costs. The developers have no direct connection to the RCA or liability for its payment; Florence is liable under the RCA and for the retirement of its bonds even if it never collects from its developers. It cannot be said that the purpose of the bond ordinance was to allow the developers to obtain their increased densities. Instead, the purpose of the bond ordinance was to satisfy a portion of Florence's fair share obligation; any benefits that accrue to the developers are incidental.
Our holding in East Orange v. Board of Water Comm'rs, 79 N.J. Super. 363, 191 A.2d 749 (App.Div.), aff'd, 41 N.J. 6, 194 A.2d 459 (1963), is readily distinguishable from this case. There, we found it unconstitutional for a municipality to lease a golf course to a private club that employed membership policies that effectively precluded the majority of the municipality's residents from partaking of the benefits of the course. Id., 79 N.J. Super. at 373-74, 191 A.2d 749. Our rationale was that the lease's purpose could not be public if it benefitted only an insignificant number of the municipality's residents while simultaneously benefitting a significant number of non-residents. By contrast, the purpose of Florence's bond ordinance will benefit all residents of Florence in that it satisfies part of an *611 obligation for which they all share responsibility. The bond ordinance, therefore, has a proper public purpose, not an improper private one.
AQN argues also that because the RCA was executed by Florence on June 21, 1989, and thus preceded its bond ordinance, it is invalid under N.J.S.A. 40A:2-37. Florence responds that the statute was not violated because the RCA was contingent upon its approval by COAH and upon the passage of a bond ordinance. N.J.S.A. 40A:2-37 provides that "[t]he governing body shall not make any contract under which payments are to be financed pursuant to a bond ordinance until such bond ordinance shall be effective." The clear purpose of this provision is to encourage fiscal prudence by requiring municipalities to have funding in place before they undertake an irrevocable commitment. The municipality is thereby prevented from being forced to adopt bond ordinances to finance contracts to which they are irrevocably committed.
Florence's consideration of the bond ordinance was not imperiled by its execution of the RCA. The RCA could have been voided if a bond ordinance had not been adopted. Therefore, considering the purpose of the statutory provision, entering into a contract contingent upon the adoption of a bond ordinance does not in these circumstances violate N.J.S.A. 40A:2-37. See Svilokos v. Department of Community Affairs, 220 N.J. Super. 441, 444, 532 A.2d 743 (App.Div. 1987); New Jersey Turnpike Employees Union v. New Jersey Turnpike Auth., 200 N.J. Super. 48, 53, 490 A.2d 338 (App.Div.), certif. denied, 101 N.J. 294, 501 A.2d 954 (1985) (court should "consider the purpose of the legislation" when construing it).
AQN contends that the bond ordinance is invalid because the RCA was not submitted to either the Florence or Pemberton Planning Board despite the requirement of N.J.S.A. 40:55D-31 that all projects "necessitating the expenditure of any public funds" be referred to the local planning board for "review and recommendation." Florence responds that there *612 was no need to submit the RCA to any municipal planning board in that N.J.S.A. 52:27D-312(c) requires that RCAs be submitted to the appropriate county planning board for a determination as to whether the RCA is consistent with "sound, comprehensive regional planning." N.J.S.A. 52:27D-312(c) in pertinent part provides:
Regional contribution agreements shall be approved by the council, after review by the county planning board ... in which the receiving municipality is located.... The council shall refer the agreement to the county planning board or agency which shall review whether or not the transfer agreement is in accordance with sound, comprehensive regional planning. In its review, the county planning board or agency shall consider the master plan and zoning ordinance of the sending and receiving municipalities, its own county master plan, and the State Development and Redevelopment Plan.
In the present case, the trial court concluded that local review was unnecessary on the grounds that "[a] general provision of law should yield in the event of an inconsistency to a specific section." Sheeran v. Nationwide Mut. Ins. Co., 159 N.J. Super. 417, 422, 388 A.2d 272 (Ch.Div.), aff'd o.b., 163 N.J. Super. 40, 394 A.2d 149 (App.Div. 1978), modified on other grounds, 80 N.J. 548, 404 A.2d 625 (1979). Specifically, the court believed that the general provision regarding the review of all capital projects (N.J.S.A. 40:55D-31) should yield to the specific provision regarding the review of RCAs (N.J.S.A. 52:27D-312(c)). Although it is not readily apparent that the two statutes are inconsistent, we do not perceive that N.J.S.A. 40:55D-31 requires that an RCA be approved by the planning board of a sending municipality. This would create unnecessary delay without substantial advantage to the sending municipality whose governing body must pass on the RCA in any event. In the ordinary course of events, the details of the project undertaken by the receiving municipality would not be expected to impact on the master plan of the sending municipality. Interpreting N.J.S.A. 40:55D-31 to require review by the planning board of the sending municipality would be wasteful to all concerned as no foreseeable benefit is derived.
*613 We cannot conclude on this record that the RCA need be submitted only to the county planning board. The planning board and governing body of Pemberton are not represented in this action; we do not have the benefit of their positions on the matter. The provisions of the municipal land use law may require review by the planning board of a receiving municipality. See N.J.S.A. 40:55D-1 to -129. However, in view of our determination that review by Florence's Planning Board was not required under N.J.S.A. 40:55D-31, any alleged shortcoming with regard to review of the RCA project by Pemberton's Planning Board would not serve to invalidate Florence's bonding ordinance.
AQN contends that the adoption of the bond ordinance violated N.J.S.A. 10:4-10 (a provision of the Open Public Meetings Act) and N.J.S.A. 40A:2-17(b) (a provision of the Local Bond Law governing notice). Although Florence asserts that the claim was untimely brought, we choose, as did the trial court judge, to rule on the merits of the issue.
N.J.S.A. 10:4-10 provides as follows:
At the commencement of every meeting of a public body the person presiding shall announce publicly, and shall cause to be entered in the minutes of the meeting, an accurate statement to the effect:
a. that adequate notice of the meeting has been provided, specifying the time, place, and manner in which such notice was provided; or
b. that adequate notice was not provided, in which case such announcement shall state (1) the nature of the urgency and importance referred to in subsection 4. b. (1) and the nature of the substantial harm to the public interest likely to result from a delay in the holding of the meeting; (2) that the meeting will be limited to discussion of and acting with respect to such matters of urgency and importance; (3) the time, place, and manner in which notice of the meeting was provided; and (4) either (a) that the need for such meeting could not reasonably have been foreseen at a time when adequate notice could have been provided, in which event, such announcement shall specify the reason why such need could not reasonably have been foreseen; or (b) that such need could reasonably have been foreseen at a time when adequate notice could have been provided, but such notice was not provided, in which event the announcement shall specify the reason why adequate notice was not provided. [Footnote omitted].
*614 The minutes for the February 7, 1990 meeting of Florence's township council reflect that
[t]he clerk read the following statement: "This meeting is being held in accordance with the provisions of the Open Public Meetings Act. Adequate notice has been provided to the official newspapers and posted in the main hall of the Municipal Office."
AQN contends that this is not sufficient to constitute the requisite "strict adherence" to the terms of the act, apparently because there was no specific statement as to the time at which the requisite notice was given nor as to the names of the "official newspapers." Florence contends that because there is no dispute that the requisite notice was in fact given, it would be unjust and hypertechnical to invalidate the bond ordinance simply because the minutes failed to specifically identify the time at which notice was given and the names of the official newspapers. We agree.
Our Supreme Court has held that our courts should require "strict adherence" with the provisions of the Open Public Meetings Act. Polillo v. Deane, 74 N.J. 562, 578, 379 A.2d 211 (1977) (invalidating commission's final action because it had failed to provide the requisite notice of its meetings). That admonition applied to a situation in which the notice of the meeting did not satisfy the requirements of the act. Id.; see also Precision Indus. Design Co. v. Beckwith, 185 N.J. Super. 9, 447 A.2d 186 (App.Div.), certif. denied, 91 N.J. 545, 453 A.2d 863 (1982) (notice did not contain information regarding the time or place of the meeting). Because "[t]he purpose of the statute is to provide adequate notice to the public so that any member thereof may attend and object to the proposed action," Gober v. Pemberton Tp., 185 N.J. Super. 323, 330, 448 A.2d 516 (App.Div. 1982), a failure to give adequate notice is a violation of the fundamental purpose of the act and requires invalidation of the subject governmental action.
Here, however, it is undisputed that Florence did provide the requisite notice. Any violation consists only of its failure to have its minutes reflect the specifics of the notice actually *615 given. The technical violation of N.J.S.A. 10:4-10 presented here does not require invalidation of the bond ordinance.
AQN further asserts that Florence violated the following portion of N.J.S.A. 40A:2-17(b):
The bond ordinance shall be published after first reading, together with notice of the introduction thereof and of the date, which shall be at least 10 days after introduction and first reading, and the time and place of further consideration for final passage, which may be at an adjournment of such meeting or another meeting.
Such publication shall be at least 1 week prior to the date for further consideration.
The relevant facts are as follows. On January 24, 1990, Florence's township clerk initiated publication of the proposed bond ordinance, together with a notice indicating that the ordinance would be considered for final passage at the municipal complex. After realizing that the notice inadvertently stated that the meeting was scheduled for February 2, not February 7, the township clerk, on January 26, 1990, a date more than one week prior to the February 7 date of the meeting, initiated publication of a corrective notice that in pertinent part provided: "The following Ordinances published in full on 1/24/90 will be considered for formal adoption after a public hearing on 2/7/90 NOT 2/2/90 as erroneously published in the Burlington County Times on 1/24/90: ... 1990-06 [i.e., the bond ordinance]." The January 26 publication did not include the full text of the bond ordinance or the other ordinances to which it referred.
The trial court concluded that there had been substantial compliance with the statute. Although publication of the corrected notice may not have satisfied the letter of the requirement that the bond ordinance be published "together with" notice of the meeting at which its final passage is to be considered, the corrected notice was sufficient to ensure that any citizen interested in the bond ordinance would know both the time and place for consideration of the proposed bond ordinance. Any citizens reviewing the original complete notice would have known well in advance of February 7 that the meeting date was in error if they had appeared in response to *616 the faulty notice. Any citizens who read the second abbreviated notice would have had only the inconvenience of referring back to the January 24 publication to determine the substance of the ordinances to which the original notice referred. We perceive no substantial detriment to those parties interested in the subject of the notices.
We affirm the entry of summary judgment except to the extent that the mayor and township council are ordered to amend the bond ordinance in accordance with this opinion.